**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00516(DLF)** |
| **v.** | : | |
| | : | |
| **EDWARD McALANIS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Edward McAlanis to 60 days of home detention, 36 months of probation, 60 hours of community service, and $500 in restitution.

**I.      Introduction**

The defendant, Edward McAlanis, participated in the violent January 6, 2021 attack on the United States Capitol—an attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars' property damage. The government's recommendation of 60 days of home detention is based on the fact that, while McAlanis promptly accepted responsibility, he was outside the Capitol for nearly four hours before entering and he watched other rioters enter the restricted area and overwhelm the Capitol building. He chose to join the rioters within the restricted area and to enter the Capitol building while alarms blared, and to spend about 15 minutes inside amid the chaos. A sentence of home detention is necessary and appropriate in this case.

1

McAlanis's conduct on January 6 took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement officers, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed.

## II.     Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 15 (Statement of Offense), at ¶¶ 1-7. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

### *Edward McAlanis's Role in the January 6, 2021 Attack on the Capitol*

McAlanis traveled aboard a bus from Pennsylvania to Washington, D.C. on January 6, 2021. He arrived at Union Station and, rather than attending the "Stop the Steal" rally at the Ellipse near the White House, traveled to the grounds of the United States Capitol.

McAlanis arrived on the grounds of the United States Capitol at approximately 10:00 a.m. on January 6, 2021. At the time, McAlanis stood outside the barriers that had been put into place on the east front of the building and began to take photographs. Photo 1 is one of the earliest photographs taken by McAlanis and shows that he (and the other protesters) was outside the restricted area, behind the erected barricades.

Photo 1



At approximately 2:00 p.m., other rioters pushed past the barriers and approached the Capitol.  McAlanis himself then entered the restricted area of the Capitol grounds and ascended the steps to the Capitol, taking pictures as he went.  As shown in Photo 2, he stood on the Capitol steps and took pictures of police officers surrounded by a throng of protesters.

Photo 2



McAlanis also took a photo (Photo 3) showing how protesters had overrun the restricted area of the Capitol grounds and surrounded police vehicles.

Photo 3



At approximately 2:06 p.m., McAlanis posed for a picture inside the restricted area on the Capitol steps giving the thumbs-up sign (Photo 4).

Photo 4



An open-source video, available on YouTube, captures the breach of the Rotunda Doors at approximately 2:37 p.m., when McAlanis was present on the East Front of the Capitol Building, in close proximity to the Rotunda Doors.[1] From 00:38-01:47 in this video, rioters engage in a heaving maneuver designed to breach the doors while officers are cornered in the entranceway. As they continue to be yelled at, shoved, sprayed with chemical irritants, and struck with flag poles and other objects, the distressed officers bend over and cover their faces to protect themselves. Rioters steal a large riot shield from the officers. These screenshots capture

---

[1] This video is available at https://www.youtube.com/watch?app=desktop&v=MVullQb-Lec.

some of the conduct that occurred there, including assaults on the officers cornered in the doorway (circled in blue):



By approximately 2:54 p.m., McAlanis had joined the crowd at the Rotunda Doors on the East Front of the Capitol. A few minutes later, at approximately 2:56 p.m., he entered the Capitol building through the same Rotunda Doors that had previously been guarded by officers to

prevent entry to the Capitol, but the officers had been overrun by other rioters and the rioters had broken the doors and glass on the doors.

As shown in Photo 5, McAlanis walked into the Capitol Building. At the time of his entry, McAlanis would have had to walk over the broken glass from the Rotunda Doors and sirens were blaring throughout the Capitol, including the Rotunda and its antechamber: a loud, high-pitched, continuous beeping, similar to a smoke alarm. McAlanis undoubtedly heard the alarms.

Photo 5



McAlanis spent about 15 minutes inside the Capitol building, appearing on video taken inside the Rotunda multiple times over a period of about 10 minutes, as shown in Photo 6.

Photo 6



At approximately 3:05 p.m., McAlanis left the Capitol Building through the same door that he entered near the Rotunda, as shown in Photo 7.

Photo 7



The government does not have evidence that McAlanis personally engaged in any destructive or violent activity while inside the Capitol Building. According to McAlanis, he entered only the Rotunda and did nothing inside the building other than take pictures. He remained inside the building for less than 15 minutes, but he remained on the Capitol grounds and continued to take pictures until around 4:30 p.m.

*The Charges and Plea Agreement*

On July 14, 2021, Edward McAlanis was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G).  On July 20, 2021, he was arrested at his home in Pennsylvania.  On August 10, 2021, McAlanis was charged by four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On November 22, 2021, he pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in the Capitol Building. Under the plea agreement, McAlanis agreed to pay $500 in restitution to the Department of the Treasury.

### III.   Statutory Penalties

McAlanis now faces sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, he faces up to six months of imprisonment and a fine of up to $5,000.[2] He must also pay $500 in restitution under the terms of the plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

---

[2] Because McAlanis has pleaded guilty to a petty offense, a term of supervised release is not authorized. *See* 18 U.S.C. § 3583(b)(3).

IV.     **Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6).

### A.     The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021, is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, this Court should note that each individual person who entered the Capitol on January 6 did so under the most extreme of circumstances. As a person entered the Capitol, they would—at a minimum— have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement and likely would have smelled chemical irritants in the air. Make no mistake, no rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant

entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.

To be clear, had McAlanis personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of the defendant is therefore not a mitigating factor in misdemeanor cases, nor does it meaningfully distinguish the defendant from most other misdemeanor defendants.  The defendant's lack of violence and property destruction is the only reason he was charged only with, and permitted to plead to, a misdemeanor rather than felony.

McAlanis arrived on the grounds of the U.S. Capitol at approximately 10:00 a.m. on January 6, 2021, when the restricted area was still secured. He remained on the grounds from that time until he entered the Capitol at approximately 3:00 p.m. Thus, he was present at approximately 2:00 p.m., when large crowds formed around the United States Capitol and certain individuals in the crowd forced their way through, up,  over and around barricades, and advanced toward the Capitol building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd

from entering the Capitol. Shortly after 2:00 p.m., however, individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts.  Rioters breached the Rotunda Doors at around 2:37 p.m.

By the time that McAlanis entered the Capitol at approximately 2:56 p.m., about 20 minutes after others had first breached following a violent confrontation with officers, and with alarms sounding in the Capitol Building, he had obviously witnessed the previously empty restricted Capitol grounds be overtaken by a mob. He too entered into the restricted area, ascended the stairs to join the mob, and enter the Capitol.

While inside the Capitol and over the course of approximately 15 minutes, McAlanis took pictures and explored the surroundings despite sirens blaring throughout the building. Eventually, McAlanis departed along with other rioters that law enforcement officers had begun to encourage or force to exit the building. Under the circumstances, McAlanis knew that he was not welcomed into the Capitol, but he entered it and remained inside for 15 minutes anyway.

Therefore, although the nature and circumstances of the offense supports a sentence of incarceration, for misdemeanor defendants who, like McAlanis, committed few, if any, of the non-exclusive factors listed above, a more lenient sentence is appropriate.

### B.       The History and Characteristics of the Defendant

As set forth in the PSR, McAlanis does not have a criminal history. PSR ¶¶ 29-35. He graduated with a Bachelor of Science degree in biology from Temple University in 2004. PSR ¶ 67.

McAlanis has been employed in a variety of sales-related positions over the last ten years. PSR ¶ 72-76.

Following his arrest, McAlanis, through his attorney, expressed a desire to plead guilty, acknowledge his conduct, and promptly resolve his case. Also, in a statement to the Probation Office, McAlanis expressed remorse for his actions.

###### C.    The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[3] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including in misdemeanor cases.

###### D.    The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. The violence at the Capitol on January 6 was cultivated by some of the rioters to interfere, and did interfere,  with one of the most important

---

[3] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

democratic processes we have: the peaceful transfer of Presidential power.  As noted by Judge

Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to
> attack the Capitol to prevent our elected officials from both parties from performing
> their constitutional and statutory duty, democracy is in trouble. The damage that
> [the defendant] and others caused that day goes way beyond the several-hour delay
> in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was

seven months ago for the United States and our diplomats to convince other nations to pursue

democracy. It means that it will be harder for all of us to convince our children and our

grandchildren that democracy stands as the immutable foundation of this nation." *Id.* At 70; *see*

*United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 24-25 ("What

happened on that day was nothing less than the attempt of a violent mob to prevent the orderly

and peaceful certification of an election as part of the transition of power from one

administration to the next, something that has happened with regularity over the history of this

country. That mob was trying to overthrow the government. . . . [and those who committed]

violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan).

The gravity of these offenses demands deterrence. This was not a protest. *See United*

*States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument

can be made defending what happened in the Capitol on January 6th as the exercise of First

Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential

rioters—especially those who intend to improperly influence the democratic process—that their

actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

McAlanis's conduct in entering the Capitol Building through the breached Rotunda Doors after watching the restricted Capitol grounds be overrun by rioters demonstrates the need for specific deterrence. In entering the Capitol, he ignored the barricades erected around the Capitol grounds, the obvious signs that the Rotunda Doors had been breached by the crowd, and the alarms that were sounding inside the building.  Apparently unconcerned, he gave the thumbs-up sign while posing for a picture on the Capitol steps. Once in the building, he stayed in or near the Rotunda and took pictures, but he was no mere tourist. He knew that the Capitol was closed to visitors, that other rioters had overrun the building, and that he was able to gain entry only because of the riot. Although his actions at the Capitol on January 6 were more limited than many others', his actions contributed to the danger and violence of that day by increasing the size of the crowd inside the restricted area and the Capitol itself.

Unlike some other January 6 defendants, McAlanis has accepted responsibility for his actions and indicated his remorse. Thus, his conduct suggests a lesser need for specific deterrence than in some other cases. A period of 60 days of home detention, 36 months of probation, and 60 hours of community service will adequately serve that purpose.

### E.    The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.[4] Each offender must be sentenced based on their individual circumstances, but with the

---

[4] Attached to this Sentencing Memorandum is an Exhibit containing tables providing additional information about the sentences imposed on other Capitol breach defendants.  The tables also show that the requested sentence here would not result in unwarranted sentencing disparities.

entirety of the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not become the default.[5] *See United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 ("I don't want to create the impression that probation is the automatic outcome here because it's not going to be.") (statement of Judge Lamberth); *see also United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 (similar).

The government and the sentencing courts have already begun to make meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors, merit serious consideration of institutional incarceration. While those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention.

McAlanis has pleaded guilty to Count Four of the Superseding Information, charging him with parading, demonstrating, or picketing in a Capitol Building, a violation of 40 U.S.C.

---

[5] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL), *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF), *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

§ 5104(e)(2)(G).  This offense is a Class B misdemeanor.  18 U.S.C. § 3559.  Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A.  § 3553(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long he or she remained inside, the nature of any statements he or she made (on social media or otherwise), whether he or she destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences.  And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement.  *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Moreover, assessing disparities, and whether they are unwarranted, requires a sufficient pool of comparators. In considering disparity, a judge cannot "consider all of the sentences not yet imposed." *United States v. Godines*, 433 F.3d 68, 69–71 (D.C. Cir. 2006). "The most a judge can do is consider those other sentences that do exist," and "[t]he comparable sentences will be much smaller in the early days of any sentencing regime than in the later." *Id*.; *see generally United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) ("Without more, two allegedly similar cases constitute too small a sample size to support a finding of an 'unwarranted disparity' in sentences.").

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id.* ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court imposed a similar sentence of 60 days' home detention on Joshua Bustle, who also spent about 20 minutes in the Rotunda and did not engage in violent or destructive conduct. *See United States v. Joshua Bustle,* 21-CR-238-TFH.  The court has, to be sure, imposed probationary sentences without home detention on other January 6 defendants who did not engage in significant aggravating conduct. *See, e.g., United States v. Parks*, 21-CR-363 (CJN); *United States v. Schwemmer,* 21-CR-364 (DLF); *United States v. Rosa*, 21-CR-68 (TNM); *United States v. Gallagher*, 21-CR-41 (CJN). In many of those cases, however, the defendants arrived at the Capitol after the barriers surrounding the Capitol grounds had already been breached.

McAlanis, by contrast, was at the Capitol for more than four hours, clearly witnessing the restrictions on access and then intentionally disregarding those restrictions. And it is undisputed that McAlanis witnessed the escalation of the events at the east front of the Capitol before he entered the building. He saw the barricades that were installed to restrict access to the Capitol and observed the barricades being removed and torn down by those who first entered into the restricted areas. He joined the crowd that breached the barriers and ascended the steps of the Capitol where rioters had breached the doors of the Capitol, pausing to take a picture while giving a thumbs-up sign. He then entered the Capitol at a time when sirens pierced the air, yet acted as if his presence in the Capitol was welcome and inconsequential.  He therefore possessed an awareness of the evolution of the riot that many other defendants did not and he intentionally joined it. Even after leaving the Capitol building, he remained on the Capitol grounds for about 80 minutes more. For all of these reasons, a sentence of home detention is justified.

### V.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence Edward McAlanis to  60 days of home detention, 36 months of probation, 60 hours of community service, and $500 restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his

behavior, while recognizing his early acceptance of responsibility.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY

By:     _/s/ Anita Eve_____
ANITA EVE
Assistant United States Attorney, Detailee
PA Bar No. 45519

Exhibit and Attachment List

Videos:

1.      Exhibit 1 – video of McAlanis's entry into the Capitol
2.      Exhibit 2 – video of McAlanis's exit from the Capitol
3.      Exhibit 3 – video of McAlanis inside the Rotunda
4.      Exhibit 4 – video of McAlanis inside the Rotunda

*Note that the 4 videos have been or will be provided via electronic communication to the Court.*

*Note that the government does not object to the public release of any of the above videos.*

Attachments:

1.      Table 1 -Table of sentencing decisions

## CERTIFICATE OF SERVICE

On this 7th day of February, 2022, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

*/s/ Anita Eve*
Anita Eve
Assistant United States Attorney